## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

STEALTHPATH IP INC.,

      Plaintiff,

vs.

ZSCALER, INC.,

      Defendant.

Civil Action No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff StealthPath IP Inc. ("StealthPath") brings this action against Zscaler, Inc. ("Defendant" or "Zscaler"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement, brought under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking damages and other relief arising out of Zscaler's infringement of United States Patent Nos. 10,374,803 ("'803 patent"), 10,965,646 ("'646 patent"), and 11,729,143 ("'143 patent") (collectively, the "Asserted Patents").

## THE PARTIES

2.      Plaintiff StealthPath is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1900 Reston Metro Plaza, #600, Reston, Virginia 20190.

3.      StealthPath owns the entire right, title, and interest in and to each of the Asserted Patents.  The Asserted Patents were the product of StealthPath's research and development that resulted in innovative technologies related to software-defined networks and "zero trust" cybersecurity.

4.     StealthPath, by and through StealthPath Inc., makes and sells a number of products that embody technology claimed in the Asserted Patents, including ZAware, ZAlert, ZConsole, and ZProtect.  StealthPath has regularly and consistently marked its patent-practicing products, complying with 35 U.S.C. § 287, including by providing notice through its webpage.[1]

5.     On information and belief, Defendant Zscaler is a corporation organized and existing under the laws of the State of Delaware with a regular and established place of business in this District at 7950 Legacy Dr. Suite 400, Plano, Texas 75024.[2]  Zscaler is registered with the Secretary of State to do business in Texas.  Zscaler can be served with process through its registered agent for service of process, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.     StealthPath repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

7.     The claims in this action arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction over StealthPath's claims of infringement of the Asserted Patents pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     The Court has personal jurisdiction over Zscaler, consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute, due at least to Zscaler's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities.  TEX. CIV. PRAC. & REM. CODE § 17.042(2).

---

[1] https://stealthpath.com/patents/ (last visited November 10, 2025).
[2] *See* https://www.zscaler.com/company/contact (last visited November 10, 2025).

9.      Upon information and belief, Zscaler has regularly and systematically transacted business in Texas, including in this District, directly or indirectly through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas, including in this District, as alleged in detail below.

10.     Venue in this District is proper under 28 U.S.C. § 1400(b) because Zscaler has a regular and established place of business in this District and has committed acts of patent infringement in this District, including through the actions of employees at its Plano office.

11.     On information and belief, Zscaler employs engineers at its Plano office who are responsible for designing, developing, deploying, and supporting the infringing technologies.  For example, Zscaler had a job posting for a Network Engineer at its Plano location whose job responsibilities are to: "[d]esign, implement, and manage Zscaler network infrastructure to ensure optimal performance and security," "[t]roubleshoot and resolve network issues related to Zscaler deployments," "[c]ollaborate with IT teams to integrate," "[s]tay updated on the latest Zscaler features and best practices," "[p]rovide technical support to users and administrators regarding Zscaler usage," and "[a]ssist in developing and maintaining network documentation." Ex. 4.  As another example, LinkedIn profiles indicate Zscaler employs several engineers and cloud security consultants with Zero Trust as core responsibilities in its Plano office.  *See, e.g.,* Exs. 5-7.

## FACTUAL ALLEGATIONS

12.     StealthPath repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

### A.  The Asserted Patents

13.     The '803 patent is entitled "Methods for Internet Communication Security" and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on

August 6, 2019.  StealthPath owns the entire right, title, and interest in and to the '803 patent.  A true and correct copy of the '803 patent is attached hereto as Exhibit 1.

14.    The '646 patent is entitled "Methods For Internet Communication Security" and was duly and legally issued by the USPTO on March 30, 2021.  StealthPath owns the entire right, title, and interest in and to the '646 patent.  A true and correct copy of the '646 patent is attached hereto as Exhibit 2.

15.    The '143 patent is entitled "Methods For Internet Communication Security" and was duly and legally issued by the USPTO on August 15, 2023.  StealthPath owns the entire right, title, and interest in and to the '143 patent.  A true and correct copy of the '143 patent is attached hereto as Exhibit 3.  The application that issued as the '143 patent is a continuation of the application that issued as the '646 patent.

16.    StealthPath, as the owner of all rights, title, and interest in and to the Asserted Patents, possesses all rights to sue and recover past and future damages for infringement of the Asserted Patents.

17.    The techniques claimed in the Asserted Patents provide specific, novel, and non-obvious solutions to problems arising in the field of cybersecurity.  For example, the inventors of the Asserted Patents recognized a "need to address security threats that can arise during hypervisor-mediated communications" in which "malware may target applications in virtual machines either directly or through the hypervisor." *See, e.g.*, Ex. 1 at 1:31-36.  The Asserted Patents describe and claim inventive techniques directed to addressing such problems, for example through the use of "a network security layer resident in the hypervisor that authenticates and authorizes incoming communications before transmission to virtualized components."  Ex. 1 at 1:45-52.  Such

techniques provided a specific solution to problems in the field of cybersecurity, and the claimed techniques were neither conventional nor routine.

18.     For example, the '803 patent claims "[a] product for authorizing network communications in a hypervisor" that includes "computer-readable program code executable in a hypervisor to perform communication management operations" that include: i) "intercepting a first network packet in the hypervisor," where the packet includes a "higher-than-[Open Systems Interconnection (OSI)] layer three portion"  ii) "decrypting" at least a portion of the higher-than-OSI layer three portion with a "single-use cryptographic key" in order to obtain "packet parameters," iii) "authorizing the first network packet in the hypervisor" by "comparing" the "packet parameters" with "expected values," and iv) "passing the authorized first network packet to a virtual device."  Ex. 1 at 283:58-284:8 (claim 1).  As the specification of the '803 patent explains, such techniques improved security by, for example, assisting in detection and prevention of "malware configured to exploit security shortcomings in hypervisors, for example through holes in memory management."  Ex. 1 at 22:49-61.

19.     Additional claims of the '803 patent recite limitations that, alone or in combination, are directed to inventive concepts that also were unconventional and not well-known or routine. For example, claim 2 of the '803 patent further requires, among other limitations, "detecting negotiation of a secure communication pathway between a first remote node and the virtual device" and "confirming success of the negotiation prior to the passing the authorized first network packet [to the virtual device]."  Ex. 1 at 284:9-22 (claim 2).  As the specification of the '803 patent explains, "Internet protocols allow open access for computer users to remotely access other computers and information stores easily from any access point, resulting in many points of attack for malware.  *Id.* at 167:9-12.  As such, the techniques disclosed and claimed in the '803 patent

"provide, for example, improvements to existing computing technology for packet-based network communications" by addressing "flaws in software and imperfect trust relationships between communicating devices." *Id.* at 167:12-16.

20.     Likewise, the inventors of the Asserted Patents recognized that vulnerabilities existed in networks by virtue of weak-links in the network security in the form of legacy systems and devices that might not be able to support advanced techniques for detection and remediation of malware attack vectors.  As such, the inventors of the Asserted Patents set about developing "interfaces to immunize, or to at least limit the attendant risks of, communications between protected and unsecure networks." Ex. 2 at 1:30-50.

21.     The '646 and '143 patents describe and claim inventive techniques directed to addressing such problems, for example through the use of "bridging network communications between device networks sharing protected, trusted Ethernet-based communications with the large body of relatively unsecure legacy devices and networks." Ex. 2 at 1:51-56.  Such techniques provided a specific solution to problems in the field of cybersecurity, and the claimed techniques were neither conventional nor routine.

22.     For example, claim 1 of the '646 patent recites, among other limitations, "[a] product for securing communications of a plurality of networked computing devices" comprising code embodied on a "non-transitory computer-readable storage medium" that is "executable by a processor to perform communication management operations" comprising: i) "receiving a first port-to-port network packet from a first computing device"; ii) "establishing a secure communication pathway with a user-application at a second computing device" using a specific sequence of steps; iii) "confirming a payload of the first port-to-port network packet conforms to a data model pre-assigned to the pre-established value for the user-application"; and iv) "passing

the payload to the second computing device via the secure communication pathway."  Such techniques provided a specific solution to problems in the field of cybersecurity, and the claimed techniques were neither conventional nor routine.

23.     Additional claims of the '646 patent recite limitations that, alone or in combination, are directed to inventive concepts that also were unconventional and not well-known or routine. For example, claim 15 of the '646 patent further recites: a) "sending a nonpublic first identification code to a network security software on the second computing device of the plurality of networked computing devices via the pre-established communication pathway"; b) "receiving, in response to the sending, a nonpublic second identification code for the second computing device"; and c) "comparing the nonpublic second identification code with a pre-established value for the second computing device."

24.     Similarly, claim 1 of the '143 patent recites, among other limitations "[a] product for securing communications of a plurality of networked computing devices" comprising code embodied on a "non-transitory computer-readable storage medium" that is "executable by a processor to perform communication management operations" comprising: i) "consuming a first network packet to obtain a first payload and a destination port number"; ii) "confirming the first payload conforms to at least one of a data model pre-assigned to the destination port number" using a specific sequence of steps; iii) "forming a second network packet comprising a second payload, and at least one of a local program identification code, and a data model identification code"; and iv) "executing at least one instruction to send the second network packet to network security software to the destination port on the one of the plurality of networked computing devices via a secure communication pathway."  Such techniques provided a specific solution to problems in the field of cybersecurity, and the claimed techniques were neither conventional nor routine.

25.    Additional claims of the '143 patent recite limitations that, alone or in combination, are directed to inventive concepts that also were unconventional and not well-known or routine. For example, claim 19 of the '143 patent further recites: a) "sending the local program identification code to the network security software via the pre-established communication pathway"; b) "receiving, in response to the sending, a remote application identification code for a remote application program"; and c) "comparing the remote application identification code with a pre-established value for the remote application program."  Such techniques provided a specific solution to problems in the field of cybersecurity, and the claimed techniques were neither conventional nor routine.

### B.  Zscaler's Accused Products

26.    Based on information presently known to StealthPath, and without the benefit of any discovery from Zscaler or the Court's claim construction, StealthPath accuses the Zscaler Zero Trust Exchange of infringement. On information and belief, the Zscaler Zero Trust Exchange includes (or is included as part of) various modules such as Zscaler Zero Trust SASE, Zscaler Zero Trust SD-WAN, Zscaler Internet Access, Zscaler Private Access, Zscaler Zero Trust Firewall, Zscaler Client Connector, Zscaler Branch Connector, Zscaler Clientless Access, and Zscaler App Connector (collectively, the "Accused Products").  To the extent that any such modules are sold to customers on a standalone basis (i.e., separately from the Zero Trust Exchange), StealthPath reserves the right to supplement this identification of Accused Products.  StealthPath further reserves the right to supplement this identification of Accused Products as discovery progresses.

27.    As noted below, each element of at least one claim of each of the Asserted Patents is literally present in the Accused Products.  To the extent that any element is not literally present, each such element is present under the doctrine of equivalents because it performs substantially

the same function in substantially the same way to achieve substantially the same result, and any differences between the Accused Products and claim element are insubstantial.

28.     Zscaler has knowledge of the Asserted Patents and its infringement of the Asserted Patents at least as of the date on which it was served with this complaint.

### C.  Claims for Patent Infringement

29.     The allegations provided below are exemplary and without prejudice to infringement contentions provided pursuant to the Court's scheduling order and local rules.  In providing these allegations, StealthPath does not convey or imply any particular claim constructions or the precise scope of the claims.  StealthPath's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

30.     The below infringement allegations are based on publicly available information and a reasonable investigation of the Accused Products.  StealthPath reserves the right to modify this description, including, for example, on the basis of information that it obtains during discovery about the Accused Products.

### COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 10,374,803

31.     StealthPath repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

32.     Claim 1 of the '803 patent recites:

1.   A product for authorizing network communications in a hypervisor, the product comprising a non-transitory computer-readable storage medium having computer-readable program code embodied therein, the computer-readable program code executable

in a hypervisor to perform communication management operations, the communication management operations comprising:

intercepting a first network packet in the hypervisor, the first network packet comprising a first higher-than-OSI layer three portion;

decrypting, with a single-use cryptographic key, at least a portion of the first higher-than-OSI layer three portion to obtain one or more first packet parameters;

authorizing the first network packet in the hypervisor, comprising: comparing the one or more first packet parameters with one or more first expected values; and

passing the authorized first network packet to a virtual device.

33.     The Accused Products infringe at least claim 1 of the '803 patent because the Accused Products satisfy each and every limitation of claim 1, either literally or under the doctrine of equivalents.

34.     For example, the Accused Products infringe claim 1 of the '803 patent because they comprise "[a] product for authorizing network communications in a hypervisor, the product comprising a non-transitory computer-readable storage medium having computer-readable program code embodied therein, the computer-readable program code executable in a hypervisor to perform communication management operations."

35.     For example, as shown in the excerpt below, Zscaler's Zero Trust SD-WAN provides "a direct-to-cloud architecture that features strong security and operational simplicity."[3] According to Zscaler, its "solution eliminates lateral threat movement by connecting users and IOT/OT devices to applications through the Zscaler Zero Trust Exchange (ZTE)."  Once "[c]loud and branch traffic is securely forwarded directly to the ZTE," "Zscaler Internet Access (ZIA) or

---

[3] *See* https://help.zscaler.com/cloud-branch-connector/what-zscaler-zero-trust-sd-wan (last visited November 9, 2025).

Zscaler Private Access (ZPA) policies can be applied depending on traffic destination for full security inspection and access identity-based control of cloud, branch, and data center communications."

 Cloud & Branch Connector
### What Is Zscaler Zero Trust SD-WAN?

Zscaler Zero Trust SD-WAN (software-defined wide area network) provides branches, on-premises data centers, and public clouds with fast and reliable access to the internet and private applications with a direct-to-cloud architecture that features strong security and operational simplicity. The solution eliminates lateral threat movement by connecting users and IoT/OT devices to applications through the Zscaler Zero Trust Exchange (ZTE).

Cloud and branch traffic is securely forwarded directly to the ZTE, where Zscaler Internet Access (ZIA) or Zscaler Private Access (ZPA) policies can be applied depending on traffic destination for full security inspection and access identity-based control of cloud, branch, and data center communications.

By combining lightweight virtual machines or plug-and-play devices with the ZTE, Zero Trust SD-WAN provides secure inbound and outbound Zero Trust networking for sites and clouds, without overlay routing, additional firewall appliances, or policy inconsistencies. Fully integrated with the ZTE, Zero Trust SD-WAN enables robust security and simplifies branch network management.

To learn more, see What Is Zscaler Branch Connector?, What Is Zscaler Cloud Connector?, What Is Zscaler Private Access?, Understanding the ZIA Cloud Architecture, and Understanding Zero Trust Branch Devices.

36.    The Zscaler Zero Trust Exchange includes multiple infringing components, including the Zscaler Client Connector, Branch Connector, Clientless Access, and App Connector, as shown in the excerpt below.[4]

---

[4] *See* https://d2ka2attjrjsw4.cloudfront.net/files/Whitepapers/zscaler-private-access.pdf (last visited November 9, 2025).

## Technical Specifications

| Zscaler Component | Supported Platforms & Systems | |
|---|---|---|
| Client Connector | iOS 9 or later | macOSX 10.10 or later |
| | Android 5 or later | CentOS 8 |
| | Windows 7 or later | Ubuntu 20.04 |
| Branch Connector | Centos, Redhat | VMware vCenter or vSphere Hypervisor |
| Clientless Access | Modern web browsers: | Chrome |
| | (HTML 5-capable) | Edge |
| | | FireFox |
| App Connector | AWS | Microsoft Hyper-V |
| | Centos, Oracle, and Redhat | VMware vCenter or vSphere Hypervisor |
| | Microsoft Azure | |

37.    The Zscaler Zero Trust SASE "securely and reliably connects users, locations, and cloud services via the Zscaler Zero Trust Exchange, as shown in the screenshot below.[5]

Zscaler Zero Trust SASE builds on the leading AI-powered security service edge (SSE) platform with a new approach to SD-WAN that securely and reliably connects users, locations, and cloud services via the Zscaler Zero Trust Exchange™.



---

[5] https://www.zscaler.com/products-and-solutions/secure-access-service-edge-sase#solution-overview (last visited November 9, 2025).

38.    The Zscaler Zero Trust Firewall "protects web and non-web traffic for all users, apps, locations, and clouds" and is integrated with the Zscaler Zero Trust Exchange, as shown in the excerpt below.[6]



39.    In addition, the Zscaler Branch Connector enables the Accused Products to manage communications in a hypervisor, such as the "VMware vCenter or vSphere Hypervisor," as shown in the excerpts below:

---

[6] https://www.zscaler.com/products-and-solutions/cloud-firewall#solution-overview (last visited November 9, 2025).

Cloud & Branch Connector
## What Is Zscaler Branch Connector?

Enabled by the Zscaler Zero Trust Exchange (ZTE), Zscaler Branch Connector is a virtual machine (VM) that simplifies traffic forwarding to Zscaler services. The Zero Trust Software-Defined Wide Area Network (SD-WAN) is deployed as a Branch Connector VM. This supplies branches and data centers with fast and reliable access to the internet and private applications with a direct-to-cloud architecture. Branch Connector works similarly to Zscaler Cloud Connector.

Branch Connector eliminates the network attack surface by establishing direct branch-to-internet and branch-to-private app connections using a full proxy architecture. It also simplifies branch communications by eliminating complex routing, virtual private networks (VPNs), and firewalls while allowing for flexible forwarding and simple policy management by using the proven Zscaler Internet Access (ZIA) and Zscaler Private Access (ZPA) policy framework.

All branch communications forward directly to the ZTE, where ZIA or ZPA policies can be applied for full security inspection and access identity-based control of branch and data center communications. The communications then forward from the ZTE to any destination (i.e., internet, private applications in a public cloud, on-premises data center, etc.). [7]

### Technical Specifications

| Zscaler Component | Supported Platforms & Systems | |
|---|---|---|
| Client Connector | iOS 9 or later | macOSX 10.10 or later |
| | Android 5 or later | CentOS 8 |
| | Windows 7 or later | Ubuntu 20.04 |
| Branch Connector | Centos, Redhat | VMware vCenter or vSphere Hypervisor |
| Clientless Access | Modern web browsers: | Chrome |
| | (HTML 5-capable) | Edge |
| | | FireFox |
| App Connector | AWS | Microsoft Hyper-V |
| | Centos, Oracle, and Redhat | VMware vCenter or vSphere Hypervisor |
| | Microsoft Azure | |

[8]

---

[7] *See* https://help.zscaler.com/cloud-branch-connector/what-zscaler-branch-connector (last visited November 9, 2025).
[8] *See* https://d2ka2attjrjsw4.cloudfront.net/files/Whitepapers/zscaler-private-access.pdf (last visited November 9, 2025).

40.    Further, the Accused Products "intercept[] a first network packet in the hypervisor, the first network packet comprising a first higher-than-OSI layer three portion," for example, via Zscaler's Secure Internet and SaaS Access (ZIA) feature:



Secure Internet and SaaS Access (ZIA)
## About Network Applications

🎥 Watch a video about Network Applications

Network applications are predefined applications maintained by Zscaler based on information in Layer 7 of the OSI model. The Zscaler service can identify network applications dynamically using Deep Packet Inspection (DPI) and control the network application traffic using firewall filtering rules. You can group network applications but cannot edit or delete them.

Network applications provide the following benefits and allow you to:

- Identify and control predefined network applications using Deep Packet Inspection (DPI).
- Define security policies based on network applications and enforce condition-based allow or block action on your network traffic.
- Group network applications to control them together using the same policies.    9

41.    The Accused Products "decrypt[], with a single-use cryptographic key, at least a portion of the first higher-than-OSI layer three portion to obtain one or more first packet parameters," for example, via Zscaler's "Zero Trust Exchange":

# Zscaler and SSL Inspection

The Zscaler Zero Trust Exchange™ platform enables complete SSL inspection at scale without latency or capacity limitations. By pairing SSL inspection with our complete security stack as a cloud service, you get superior protection without the constraints of appliances.    10

---

9 *See* https://help.zscaler.com/zia/about-network-applications,
https://d2ka2attjrjsw4.cloudfront.net/files/Whitepapers/zscaler-private-access.pdf (last visited November 9, 2025).
10 *See* https://www.zscaler.com/resources/security-terms-glossary/what-is-ssl-inspection (last visited November 9, 2025).

For a more specific explanation, we can dig into how it works on the Zscaler platform. When you enable SSL inspection with Zscaler, the process looks like this:

1. A user opens a browser and sends an HTTPS request.

2. The Zscaler service intercepts the HTTPS request. Through a separate SSL tunnel, the service sends its own HTTPS request to the destination server and conducts SSL negotiations.

3. The destination server sends the Zscaler service its certificate with its public key.

4. The Zscaler service and destination server complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.

5. The Zscaler service conducts SSL negotiations with the user's browser. It sends the browser the Zscaler intermediate certificate or your organization's custom intermediate root as well as a server certificate signed by the Zscaler intermediate CA. The browser validates the certificate chain in the browser's certificate store.

6. The Zscaler service and the browser complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.



[11]

42.    The Accused Products "authoriz[e] the first network packet in the hypervisor, comprising: comparing the one or more first packet parameters with one or more first expected values."  For example, the Accused Products compare the first packet parameters with the first expected values, *e.g.*, to filter applications as shown in the example figure below.

---

[11] *See* https://www.zscaler.com/resources/security-terms-glossary/what-is-ssl-inspection (last visited November 9, 2025).

## Policy Execution

There is a series of logical operators between the criteria in Firewall Filtering policy rules. The criteria on each tab have their own set of logical operators.

The tabs trigger based on the following relationships:

- **Who, Where, & When:** [(Users OR Groups OR Departments) AND (Locations OR Location Groups) AND Time AND (Devices OR Device Groups OR Workload Groups) AND Device Trust Level]
- **Services:** (Network Service Groups OR Network Services)
- **Applications:** [(Network Application Groups OR Network Applications) AND (Application Service Groups)]
- **Source IP:** (Source IPv4 Groups OR Source IPv6 Groups OR IP Addresses OR Countries)
- **Destination IP:** (Destination IPv4 Groups OR Destination IPv6 Groups OR IP Address or FQDN OR Countries OR Categories)

In addition to the logical operators between criteria, the relationship between tabs is AND.

› See how an example Firewall Filtering policy triggers                                    12

43.    The Accused Products "pass[] the authorized first network packet to a virtual device." For example, the network traffic may be "Allow[ed]." [13]

9. Choose the Network Traffic **Action** that the Zscaler service takes when packets match the rule.
- **Allow:** Allow the packets to pass through the firewall.
- **Block/Drop:** Silently block packets that match the rule.

> When the Block/Drop action is configured to block IP addresses, it might still result in sending packets to the destination server based on web sessions if the traffic is HTTPS and an end user notification (EUN) is served via web security policies. These packets are sent to obtain the server's signed certificate (i.e., beaconing), which is a legitimate and necessary part of the EUN workflow.

- **Block/ICMP:** Drop all packets that match the rule and send the client an ICMP error message of Type 3 (Destination Unreachable) and Code 13 (Communication Administratively Prohibited).
- **Block/Reset:** For TCP traffic, the Zscaler service drops all packets that match the rule and sends the client a TCP reset. (A TCP packet with the *reset* (RST) flag is set to 1 in the TCPheader, indicating that the TCP connection must be instantly stopped.) For non-TCP traffic, the action is the same as Block/Drop.

> If Traffic Capture is enabled, the **Capture** option appears when **Block** is selected. Captured traffic is stored in PCAP files for later analysis. To enable Traffic Capture for this policy, see Configuring Traffic Capture.

44.    Zscaler has infringed and continues to infringe one or more claims of the '803 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling the Accused Products within the United States, including within this District.

---

[12] *See* https://help.zscaler.com/zia/configuring-firewall-filtering-policy (last visited November 9, 2025).

[13] *See* https://help.zscaler.com/zia/configuring-firewall-filtering-policy (last visited November 9, 2025).

45.     Additionally or alternatively, to the extent Zscaler imports the Accused Products into the United States from manufacturing facilities abroad, such importation constitutes an additional act of infringement in violation of 35 U.S.C. § 271(a).

46.     Additionally or alternatively, Zscaler infringes one or more claims of the '803 patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use the Accused Products within the United States, including within this District, by providing instructions and support to its customers to use the Accused Products in a way that directly infringes the '803 patent.  For example, Zscaler regularly schedules webinars to instruct users regarding operation of the Accused Products.[14]

47.     Additionally or alternatively, Zscaler is liable for contributory infringement under 35 U.S.C. § 271(c) by virtue of offering to sell or selling the Accused Products in the United States and/or importing the Accused Products into the United States.  At least as of the date Zscaler received this complaint, Zscaler has known that the Accused Products are especially made and/or adapted for infringement of the '803 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

48.     Additionally or alternatively, Zscaler has infringed and continues to infringe one or more claims of the '803 patent in violation of 35 U.S.C. § 271(f) by supplying in or from the United States for combination outside the country: (1) all or a substantial portion of the components for the patented invention and (2) a component of the patented invention especially made or adapted for use in the invention.  For example, Zscaler supplies and offers to supply the Accused Products from the United States to customers located outside of the United States in such

---

[14]    *See*  https://info.zscaler.com/webinar-start-here-an-introduction-to-zero-trust  (last  visited November 9, 2025).

a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the '803 patent if such combination occurred within the United States.

49.     Accordingly, Zscaler's acts of infringement of the '803 patent are being committed with full knowledge of StealthPath's patent rights and full knowledge of infringement.  Zscaler's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling StealthPath to enhanced damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

50.     StealthPath has suffered and continues to suffer damages, including lost profits, as a result of Zscaler's infringement of the '803 patent in an amount to be proven at trial, but not less than a reasonable royalty.

51.     StealthPath has satisfied all statutory obligations required to collect pre-filing damages for the infringement of the '803 patent under 35 U.S.C. § 287(a), including by providing notice through its webpage.[15]

52.     Zscaler's infringement has caused irreparable harm to StealthPath, and StealthPath will continue to suffer irreparable harm unless and until that infringement is enjoined by this Court.

**COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 10,965,646**

53.     StealthPath repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     Claim 1 of the '646 patent recites:

1. A product for securing communications of a plurality of networked computing devices, the product comprising a non-transitory computer-readable storage medium having computer-readable program code embodied therein, the computer-readable program code executable by a processor to perform communication

---

[15] https://stealthpath.com/patents/ (last visited November 10, 2025).

management operations, the communication management operations comprising:

receiving a first port-to-port network packet from a first computing device;

establishing a secure communication pathway with a user-application at a second computing device of the plurality of networked computing devices, comprising:

sending an application identifier to the second computing device via a pre-established communication pathway;

receiving, in response to the sending, a second application identifier for the user-application; and

comparing the second application identifier with a pre-established value for the user-application;

confirming a payload of the first port-to-port network packet conforms to a data model pre-assigned to the pre-established value for the user-application; and

passing the payload to the second computing device via the secure communication pathway.

55.    The Accused Products infringe at least claim 1 of the '646 patent because the Accused Products satisfy each and every limitation of claim 1, either literally or under the doctrine of equivalents.

56.    For example, the Accused Products infringe claim 1 of the '646 patent because they are "[a] product for securing communications of a plurality of networked computing devices, the product comprising a non-transitory computer-readable storage medium having computer-readable program code embodied therein, the computer-readable program code executable by a processor to perform communication management operations," as shown below[16]:

---

[16] *See* https://www.zscaler.com/products-and-solutions/zscaler-client-connector (last visited November 9, 2025).

# Secure digital transformation requires zero trust

Firewall–and–VPN architectures connect users to the network for security and connectivity—even remote users accessing SaaS. This slows productivity, enables lateral threat movement, and entails other risks.

Client Connector, a lightweight agent, forwards user traffic to the Zscaler Zero Trust Exchange, the world's largest cloud security platform, which acts as an intelligent switchboard to securely connect users directly to their destinations.



57.    For example, the Accused Products can protect SSL Traffic by establishing separate SSL tunnels with the user's browser and with the destination server.[17]

---

[17] *See* https://help.zscaler.com/zia/understanding-ssl-inspection (last visited November 9, 2025).

**Protecting SSL Traffic**

When you enable SSL inspection, the Zscaler service establishes a separate SSL tunnel with the user's browser and with the destination server. The diagram below shows the Zscaler SSL inspection process:

1. A user opens a browser and sends an HTTPS request.
2. The Zscaler service intercepts the HTTPS request. Through a separate SSL tunnel, the service sends its own HTTPS request to the destination server and conducts SSL negotiations.
3. The destination server sends the Zscaler service its certificate with its public key.
4. The Zscaler service and destination server complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.
5. The Zscaler service conducts SSL negotiations with the user's browser. It sends the browser the Zscaler intermediate certificate or your organization's custom intermediate root, as well as a server certificate signed by the Zscaler intermediate Certificate Authority (CA). The browser validates the certificate chain in the browser's certificate store.

> Zscaler issued certificates (leaf or short-lived issuing CA) contain a CRL Distribution Point (CRLDP) hosted by Zscaler that provides a mechanism for certification revocation.

6. The Zscaler service and the browser complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.



58.     Further, the Accused Products "receiv[e] a first port-to-port network packet from a first computing device."  For example, the Accused Products receive "[i]nbound web traffic" that is based on specific ports.[18]

---

[18] *See* https://help.zscaler.com/zscaler-deployments-operations/zia-policy-leading-practices-guide (last visited November 9, 2025).

**Zscaler Service Modules**

ZIA uses full-featured inline proxies called ZIA Public Service Edges to inspect and enforce policies on traffic entering or leaving your organization. ZIA Public Service Edges feature Single-Scan, Multi-Action (SSMA) technology that handles the traffic inspection and policy execution in the ZIA Public Service Edge's web and firewall modules.

SSMA allows inspection engines to scan all content in a single pass. Packets are placed in shared memory in highly-optimized custom servers. All CPUs on a ZIA Public Service Edge access those packets at the same time. With dedicated CPUs for each function, all engines can inspect the packets simultaneously instead of using a chained model of physical or virtual appliances (where each security service processes packets in turn, adding incremental latency). SSMA technology applies the Zscaler service policies based on a variety of security engines with minimal latency.

After the SSMA inspection process is complete, the ZIA Public Service Edge executes policies using a specific precedence order. Each ZIA Public Service Edge has two main modules for applying policies: a web module and a firewall module.

At a high level, this is how traffic flows through the modules:

- Outbound web traffic. The ZIA Public Service Edge sends outbound internet web traffic from your organization to the firewall module for policy evaluation. If the traffic violates a firewall policy, it blocks the transaction. If the traffic does not violate any firewall policies, it sends the traffic to the web module for policy evaluation. In the web module, if the traffic violates a web policy, it blocks the transaction. If the traffic does not violate any web policies, the transaction is allowed to the internet.
- Outbound non-web traffic. The ZIA Public Service Edge sends outbound non-web traffic bound for ports other than 80/443 (or other HTTP/HTTPS ports) directly to the firewall module for policy evaluation. If the traffic violates a firewall policy, it blocks the transaction. If the traffic does not violate any firewall policies, it allows the traffic to the internet.
- Inbound web traffic. The ZIA Public Service Edge sends inbound web traffic (HTTP/HTTPS traffic for ports 80/443) from the internet in response to HTTP GET/POST requests to its web module for policy evaluation. If the traffic violates a web policy, it blocks the transaction. If the traffic does not violate any web policies, it allows the traffic into your organization.

59.     For example, as shown in the figure below, the Accused Products can receive a first port-to-port network packet, *e.g.,* a HTTPS request from a first computing device, *e.g.*, a destination server.[19]

---

[19] *See* https://help.zscaler.com/zia/understanding-ssl-inspection (last visited November 9, 2025).

**Protecting SSL Traffic**

When you enable SSL inspection, the Zscaler service establishes a separate SSL tunnel with the user's browser and with the destination server. The diagram below shows the Zscaler SSL inspection process:

1. A user opens a browser and sends an HTTPS request.
2. The Zscaler service intercepts the HTTPS request. Through a separate SSL tunnel, the service sends its own HTTPS request to the destination server and conducts SSL negotiations.
3. The destination server sends the Zscaler service its certificate with its public key.
4. The Zscaler service and destination server complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.
5. The Zscaler service conducts SSL negotiations with the user's browser. It sends the browser the Zscaler intermediate certificate or your organization's custom intermediate root, as well as a server certificate signed by the Zscaler intermediate Certificate Authority (CA). The browser validates the certificate chain in the browser's certificate store.

> Zscaler issued certificates (leaf or short-lived issuing CA) contain a CRL Distribution Point (CRLDP) hosted by Zscaler that provides a mechanism for certification revocation.

6. The Zscaler service and the browser complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.



60.     The Accused Products "establish[] a secure communication pathway with a user-application at a second computing device of the plurality of networked computing devices, comprising: sending an application identifier to the second computing device via a pre-established communication pathway."  For example, as shown in the figure below, the Accused Products send an application identifier, *e.g.*, a server certificate, to the second computing device, *e.g.*, the client device. [20]

---

[20] *See* https://help.zscaler.com/zia/understanding-secure-sockets-layer-ssl (last visited November 10, 2025).

1. The client sends its HTTPS request in the Client Hello. The entire HTTPS message is encrypted, including the headers and the request/response load. The actual hostname and domain name being accessed is not visible. How the Zscaler service determines the destination host name depends on whether it is operating in transparent mode or explicit mode.
2. The server responds with its Hello message and its certificate. (A certificate is an electronic form that verifies the identity and public key of the subject of the certificate.) SSL uses the Public Key Infrastructure (PKI) to ensure the trustworthiness of the certificates.
3. The client and server continue with the SSL negotiation.
4. After the SSL tunnel is established, the application data is sent securely through the tunnel.

The following packet capture shows the SSL packets as they are exchanged between the browser, which is the client, and the web server.

🖼 Hide image.



61.     For example, as shown in the figure below, the Accused Products can establish a secure communication pathway with a user-application at a second computing device, e.g., a user device operating a browser, via a pre-established communication pathway, e.g., a SSL  tunnel.[21]

---

[21] *See* https://help.zscaler.com/zia/understanding-ssl-inspection (last visited November 10, 2025).

**Protecting SSL Traffic**

When you enable SSL inspection, the Zscaler service establishes a separate SSL tunnel with the user's browser and with the destination server. The diagram below shows the Zscaler SSL inspection process:

1. A user opens a browser and sends an HTTPS request.
2. The Zscaler service intercepts the HTTPS request. Through a separate SSL tunnel, the service sends its own HTTPS request to the destination server and conducts SSL negotiations.
3. The destination server sends the Zscaler service its certificate with its public key.
4. The Zscaler service and destination server complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.
5. The Zscaler service conducts SSL negotiations with the user's browser. It sends the browser the Zscaler intermediate certificate or your organization's custom intermediate root, as well as a server certificate signed by the Zscaler intermediate Certificate Authority (CA). The browser validates the certificate chain in the browser's certificate store.

> 🏛 Zscaler issued certificates (leaf or short-lived issuing CA) contain a CRL Distribution Point (CRLDP) hosted by Zscaler that provides a mechanism for certification revocation.

6. The Zscaler service and the browser complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.



62.     As another example, the "pre-established communication pathway" in the Accused Products can be a pathway of enhanced access control such as the "Dynamic Host Configuration Protocol (DHCP) proxy."[22]

---

[22] *See* https://www.zscaler.com/blogs/company-news/zscaler-acquires-airgap-networks-extends-zero-trust-sase (last visited November 10, 2025).

## The significance of a 'network of one'

Why is Airgap's technology so compelling?  Their agentless, identity-based approach to segmentation is a total re-think of the complexity of legacy segmentation approaches, for stronger, more predictable segmentation outcomes and greater operational simplicity. This highly secure but simplified approach includes Dynamic Host Configuration Protocol (DHCP) proxy, which creates a "network of one" for all connected endpoints, including those enabled with static IP. For example, the DHCP proxy intercepts all DHCP requests from devices trying to join the LAN. This enables Airgap to assign a /32 IP address and default gateway, effectively creating a segment of one.  Airgap can then dynamically control access through continuous assessment of identity and context.  Now, Airgap can provide visibility and policy enforcement at every connected endpoint without adding any software to those sensitive endpoints.  This approach eliminates the risk of east-west lateral movement on local networks as well as the complexity of traditional segmentation approaches like east-west firewalls, without hardware upgrades or operational disruption.

63.    The Accused Products "receiv[e], in response to the sending, a second application identifier for the user-application."  For example, as shown in the figure below, the Accused Products receive a second application identifier, *e.g.*, a client certificate with a client key, for the user-application in response to sending the first application identifier.[23]

1. The client sends its HTTPS request in the Client Hello. The entire HTTPS message is encrypted, including the headers and the request/response load. The actual hostname and domain name being accessed is not visible. How the Zscaler service determines the destination host name depends on whether it is operating in transparent mode or explicit mode.
2. The server responds with its Hello message and its certificate. (A certificate is an electronic form that verifies the identity and public key of the subject of the certificate.) SSL uses the Public Key Infrastructure (PKI) to ensure the trustworthiness of the certificates.
3. The client and server continue with the SSL negotiation.
4. After the SSL tunnel is established, the application data is sent securely through the tunnel.

The following packet capture shows the SSL packets as they are exchanged between the browser, which is the client, and the web server.

Hide image.



---

[23] *See* https://help.zscaler.com/zia/understanding-secure-sockets-layer-ssl (last visited November 10, 2025).

64.    The Accused Products "compar[e] the second application identifier with a pre-established value for the user-application."  For example, as shown in the figure above, the Accused Products validate the client certificate and client key with a pre-established value for the user-application.[24]

65.    The Accused Products "confirm[] a payload of the first port-to-port network packet conforms to a data model pre-assigned to the pre-established value for the user-application."  For example, as shown below, the Accused Products confirm that the packet payload from a given application conforms to a data model pre-assigned to the pre-established value for the user-application.[25]

### Allowlist Processes

This section lists the file paths to allowlist for Zscaler Client Connector.

⌄ Windows

The location of files to allowlist depends on your version of Zscaler Client Connector.

> If your organization uses Group Policy Object (GPO) to push policies on both Windows 64-bit and Windows 32-bit systems, you must add the file paths of both versions to your GPO policy.

⌄ Zscaler Client Connector for Windows: 32-bit version

Allowlist the entire path of the following files:

> These files reside in the %ProgramFiles(x86) folder even if you are running the 32-bit version of Zscaler Client Connector on a 64-bit system.

- %ProgramFiles(x86)%\Zscaler\ZSAHelper\ZSAHelper.exe
- %ProgramFiles(x86)%\Zscaler\ZSATray\ZSATray.exe
- %ProgramFiles(x86)%\Zscaler\ZSATrayManager\ZSATrayManager.exe
- %ProgramFiles(x86)%\Zscaler\ZSATunnel\ZSATunnel.exe
- %ProgramFiles(x86)%\Zscaler\ZSAService\ZSAService.exe
- %ProgramFiles(x86)%\Zscaler\ZSA2DP
- %ProgramFiles(x86)%\Zscaler\ZSAUpdater\ZSAUpdater.exe
- %ProgramFiles(x86)%\Zscaler\ZSAUPM\ZSAUpm.exe
- %ProgramFiles(x86)%\Zscaler\Updater\zscalerappupdater.exe
- %ProgramFiles(x86)%\Zscaler\Updater\zscalerchecksumverifier.exe
- %ProgramFiles(x86)%\Zscaler\ThirdParty\TAPDriver\x86\Zscaler-Network-Adapter-1.0.1.0.exe
- %ProgramFiles(x86)%\Zscaler\ThirdParty\TAPDriver\x86\Zscaler-Network-Adapter-1.0.2.0.exe
- %ProgramFiles(x86)%\Zscaler\ThirdParty\TAPDriver\x86\Zscaler-Network-Adapter-Win10-1.0.2.0.exe
- C:\ProgramData\Zscaler
- C:\Windows\System32\LogonUI.exe
- %ProgramFiles%\Zscaler\ZDP\ZDPService.exe
- %ProgramFiles%\Zscaler\ZDP\ZDPClassifier.exe
- %ProgramFiles%\Zscaler\ZDP\ZDPApp.exe
- %ProgramFiles%\Zscaler\ZDP\ZDPResources.exe

---

[24] *Id.*

[25] *See* https://help.zscaler.com/zscaler-client-connector/zscaler-client-connector-processes-allowlist (last visited November 10, 2025).

66.    The Accused Products "pass[] the payload to the second computing device via the secure communication pathway."  For example, the payload is passed to the second computing device via the secure communication pathway in the example figure below. [26]



Figure 3.  Data loss prevention for your data being transmitted or stored in the cloud

67.    For example, as shown in the figure below, the Accused Products can pass the payload to the second computing device via the secure pathway.[27]

---

[26] *See* https://help.zscaler.com/zia/data-protection-secure-internet-and-saas-access (last visited November 10, 2025).

[27] *See* https://help.zscaler.com/zia/understanding-ssl-inspection (last visited November 10, 2025).

**Protecting SSL Traffic**

When you enable SSL inspection, the Zscaler service establishes a separate SSL tunnel with the user's browser and with the destination server. The diagram below shows the Zscaler SSL inspection process:

1. A user opens a browser and sends an HTTPS request.
2. The Zscaler service intercepts the HTTPS request. Through a separate SSL tunnel, the service sends its own HTTPS request to the destination server and conducts SSL negotiations.
3. The destination server sends the Zscaler service its certificate with its public key.
4. The Zscaler service and destination server complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.
5. The Zscaler service conducts SSL negotiations with the user's browser. It sends the browser the Zscaler intermediate certificate or your organization's custom intermediate root, as well as a server certificate signed by the Zscaler intermediate Certificate Authority (CA). The browser validates the certificate chain in the browser's certificate store.

> Zscaler issued certificates (leaf or short-lived issuing CA) contain a CRL Distribution Point (CRLDP) hosted by Zscaler that provides a mechanism for certification revocation.

6. The Zscaler service and the browser complete the SSL handshake. The application data and subsequent messages are sent through the SSL tunnel.



68.     Zscaler has infringed and continues to infringe one or more claims of the '646 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling the Accused Products within the United States, including within this District.

69.     Additionally or alternatively, to the extent Zscaler imports the Accused Products into the United States from manufacturing facilities abroad, such importation constitutes an additional act of infringement in violation of 35 U.S.C. § 271(a).

70.     Zscaler has infringed and continues to infringe one or more claims of the '646 patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use the Accused

Products within the United States, including within this District, by providing instructions and support to its customers, including through its regularly-scheduled webinars described above.

71.     Additionally or alternatively, Zscaler is liable for contributory infringement of any such claim under 35 U.S.C. § 271(c) by virtue of offering to sell or selling the Accused Products in the United States and/or importing the Accused Products into the United States.  At least as of the date Zscaler received this complaint, Zscaler has known that the Accused Products are especially made and/or adapted for infringement of the '646 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

72.     Additionally or alternatively, Zscaler has infringed and continues to infringe one or more claims of the '646 patent in violation of 35 U.S.C. § 271(f) by supplying in or from the United States for combination outside the country: (1) all or a substantial portion of the components for the patented invention and (2) a component of the patented invention especially made or adapted for use in the invention.  For example, Zscaler supplies and offers to supply the Accused Products from the United States to customers located outside of the United States in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the '646 patent if such combination occurred within the United States.

73.     Accordingly, Zscaler's acts of infringement of the '646 patent are being committed with full knowledge of StealthPath's patent rights and full knowledge of infringement.  Zscaler's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling StealthPath to enhanced damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

74.     StealthPath has suffered and continues to suffer damages, including lost profits, as a result of Zscaler's infringement of the '646 patent in an amount to be proven at trial, but not less than a reasonable royalty.

75.     StealthPath has satisfied all statutory obligations required to collect pre-filing damages for the infringement of the '646 patent under 35 U.S.C. § 287(a), including by providing notice through its webpage.[28]

76.     Zscaler's infringement has caused irreparable harm to StealthPath, and StealthPath will continue to suffer irreparable harm unless and until that infringement is enjoined by this Court.

## COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 11,729,143

77.     StealthPath repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.     Claim 1 of the '143 patent recites:

1.  A product for securing communications of a plurality of networked computing devices, the product comprising a non-transitory computer-readable storage medium having computer-readable program code embodied therein, the computer-readable program code executable by a processor to perform communication management operations, the communication management operations comprising:

consuming a first network packet to obtain a first payload and a destination port number, the destination port number assigned to a destination port on one of the plurality of networked computing devices;

confirming the first payload conforms to at least one of a data model pre-assigned to the destination port number;

after confirmation that the first payload conforms to the data model for the destination port, forming a second network packet

---

[28] https://stealthpath.com/patents/ (last visited November 10, 2025).

comprising a second payload, and at least one of a local program identification code, and a data model identification code; and

executing at least one instruction to send the second network packet to network security software to the destination port on the one of the plurality of networked computing devices via a secure communication pathway.

79.    The Accused Products infringe at least claim 1 of the '143 patent because the Accused Products satisfy each and every limitation of claim 1, either literally or under the doctrine of equivalents.

80.    For example, the Accused Products include claim 1 of the '143 patent because they are "[a] product for securing communications of a plurality of networked computing devices, the product comprising a non-transitory computer-readable storage medium having computer-readable program code embodied therein, the computer-readable program code executable by a processor to perform communication management operations," as shown below[29]:

---

[29] *See* https://www.zscaler.com/products-and-solutions/zscaler-client-connector (last visited November 10, 2025).

## Secure digital transformation requires zero trust

Firewall–and–VPN architectures connect users to the network for security and connectivity—even remote users accessing SaaS. This slows productivity, enables lateral threat movement, and entails other risks.

Client Connector, a lightweight agent, forwards user traffic to the Zscaler Zero Trust Exchange, the world's largest cloud security platform, which acts as an intelligent switchboard to securely connect users directly to their destinations.



81.    Further, the Accused Products "consum[e] a first network packet to obtain a first payload and a destination port number, the destination port number assigned to a destination port on one of the plurality of networked computing devices."  For example, the Accused Products receive "[i]nbound web traffic" that is based on specific ports.[30]

---

[30] *See* https://help.zscaler.com/zscaler-deployments-operations/zia-policy-leading-practices-guide (last visited November 10, 2025).

### Zscaler Service Modules

ZIA uses full-featured inline proxies called ZIA Public Service Edges to inspect and enforce policies on traffic entering or leaving your organization. ZIA Public Service Edges feature Single-Scan, Multi-Action (SSMA) technology that handles the traffic inspection and policy execution in the ZIA Public Service Edge's web and firewall modules.

SSMA allows inspection engines to scan all content in a single pass. Packets are placed in shared memory in highly-optimized custom servers. All CPUs on a ZIA Public Service Edge access those packets at the same time. With dedicated CPUs for each function, all engines can inspect the packets simultaneously instead of using a chained model of physical or virtual appliances (where each security service processes packets in turn, adding incremental latency). SSMA technology applies the Zscaler service policies based on a variety of security engines with minimal latency.

After the SSMA inspection process is complete, the ZIA Public Service Edge executes policies using a specific precedence order. Each ZIA Public Service Edge has two main modules for applying policies: a web module and a firewall module.

At a high level, this is how traffic flows through the modules:

- Outbound web traffic. The ZIA Public Service Edge sends outbound internet web traffic from your organization to the firewall module for policy evaluation. If the traffic violates a firewall policy, it blocks the transaction. If the traffic does not violate any firewall policies, it sends the traffic to the web module for policy evaluation. In the web module, if the traffic violates a web policy, it blocks the transaction. If the traffic does not violate any web policies, the transaction is allowed to the internet.
- Outbound non-web traffic. The ZIA Public Service Edge sends outbound non-web traffic bound for ports other than 80/443 (or other HTTP/HTTPS ports) directly to the firewall module for policy evaluation. If the traffic violates a firewall policy, it blocks the transaction. If the traffic does not violate any firewall policies, it allows the traffic to the internet.
- Inbound web traffic. The ZIA Public Service Edge sends inbound web traffic (HTTP/HTTPS traffic for ports 80/443) from the internet in response to HTTP GET/POST requests to its web module for policy evaluation. If the traffic violates a web policy, it blocks the transaction. If the traffic does not violate any web policies, it allows the traffic into your organization.

82.     The Accused Products "confirm[] the first payload conforms to at least one of a data model pre-assigned to the destination port number."  For example, the Accused Products have customizable associations between particular port numbers and "types of traffic" and "custom services."[31]

## Configuring Custom Ports

By default, the Zscaler service "listens to" the following ports:

- Port 80 for HTTP traffic
- Port 443 for HTTPS traffic
- Port 53 for DNS traffic
- Port 21 for FTP traffic
- Port 554 for RTSP traffic
- Port 1723 for PPTP traffic

If your organization uses other or additional ports for these types of traffic, you can configure the service to use custom ports for them. To begin, create a custom service with the appropriate ports. Then, in Advanced Settings, configure the service to accept traffic from the ports assigned to the custom service that you created.

83.     In addition, the Accused Products compare the first packet parameters with the first expected value, *e.g.*, to filter applications, as shown in the example figure below.[32]

---

[31] *See* https://help.zscaler.com/zia/configuring-custom-ports (last visited November 10, 2025).

[32] *See* https://help.zscaler.com/zia/configuring-firewall-filtering-policy (last visited November

## Policy Execution

There is a series of logical operators between the criteria in Firewall Filtering policy rules. The criteria on each tab have their own set of logical operators.

The tabs trigger based on the following relationships:

- **Who, Where, & When:** [(Users OR Groups OR Departments) AND (Locations OR Location Groups) AND Time AND (Devices OR Device Groups OR Workload Groups) AND Device Trust Level]
- **Services:** (Network Service Groups OR Network Services)
- **Applications:** [(Network Application Groups OR Network Applications) AND (Application Service Groups)]
- **Source IP:** (Source IPv4 Groups OR Source IPv6 Groups OR IP Addresses OR Countries)
- **Destination IP:** (Destination IPv4 Groups OR Destination IPv6 Groups OR IP Address or FQDN OR Countries OR Categories)

In addition to the logical operators between criteria, the relationship between tabs is AND.

› See how an example Firewall Filtering policy triggers

84.    The Accused Products "after confirmation that the first payload conforms to the data model for the destination port, form[] a second network packet comprising a second payload, and at least one of a local program identification code, and a data model identification code." For example, the Accused Products form and transmit a second network packet with a second payload which includes, *e.g.*, a local program identification code identifying Zscaler's Client Connector agent on an end-user's device.[33]

---

10, 2025).

[33] *See* https://help.zscaler.com/zia/choosing-traffic-forwarding-methods (last visited November 10, 2025).

85.     The Accused Products "execut[e] at least one instruction to send the second network packet to network security software to the destination port on the one of the plurality of networked computing devices via a secure communication pathway."  For example, the Accused Products send the second network packet to network security software, Client Connector, to the destination port on the one of the plurality of networked computing devices via a secure communication pathway in the example figure below.[34]

---

[34] *See* https://help.zscaler.com/zpa/understanding-zpa-zia-and-zscaler-client-connector-clouds (last visited November 10, 2025).

Every ZIA cloud has an associated Zscaler Client Connector Portal. The Zscaler Client Connector Portals (zscaler.net and zscalertwo.net) can communicate with either of the ZPA clouds (private.zscaler.com and zpatwo.net). The following diagram shows the association between the ZPA, Zscaler Client Connector, and ZIA clouds at a high level.



86.     Zscaler has infringed and continues to infringe one or more claims of the '143 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling the Accused Products within the United States, including within this District.

87.     Additionally or alternatively, to the extent Zscaler imports the Accused Products into the United States from manufacturing facilities abroad, such importation constitutes an additional act of infringement in violation of 35 U.S.C. § 271(a).

88.     Zscaler has infringed and continues to infringe one or more claims of the '143 patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use the Accused Products within the United States, including within this District, by providing instructions and support to its customers, including through the regularly-scheduled webinars discussed above.

89.     Additionally or alternatively, Zscaler is liable for contributory infringement of any such claim under 35 U.S.C. § 271(c) by virtue of offering to sell or selling the Accused Products in the United States and/or importing the Accused Products into the United States.  At least as of the date Zscaler received this complaint, Zscaler has known that the Accused Products are especially made and/or adapted for infringement of the '143 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

90.     Zscaler has infringed and continues to infringe one or more claims of the '143 patent in violation of 35 U.S.C. § 271(f) by supplying in or from the United States for combination outside the country: (1) all or a substantial portion of the components for the patented invention and (2) a component of the patented invention especially made or adapted for use in the invention. For example, Zscaler supplies and offers to supply the Accused Products from the United States to customers located outside of the United States in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the '143 patent if such combination occurred within the United States.

91.     Accordingly, Zscaler's acts of infringement of the '143 patent are being committed with full knowledge of StealthPath's patent rights and full knowledge of infringement.  Zscaler's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling StealthPath to enhanced damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

92.     StealthPath has suffered and continues to suffer damages, including lost profits, as a result of Zscaler's infringement of the '143 patent in an amount to be proven at trial, but not less than a reasonable royalty.

93.    StealthPath has satisfied all statutory obligations required to collect pre-filing damages for the infringement of the '143 patent under 35 U.S.C. § 287(a), including by providing notice through its webpage.[35]

94.    Zscaler's infringement has caused irreparable harm to StealthPath, and StealthPath will continue to suffer irreparable harm unless and until that infringement is enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, StealthPath respectfully requests the following relief:

(A)    The entry of judgment in favor of StealthPath, and against Zscaler, that Zscaler has infringed and continues to infringe one or more claims of each of the Asserted Patents;

(B)    An Order preliminarily and permanently enjoining Zscaler and its officers, agents, employees, and those in privity or in active concert or participation with them, from further infringement of the Asserted Patents;

(C)    The entry of a judgment awarding StealthPath compensatory damages resulting from Zscaler's infringement in an amount according to proof, including no less than a reasonable royalty;

(D)    Enhanced damages pursuant to 35 U.S.C. § 284;

(E)    Pre-judgment and post-judgment interest;

(F)    Attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees;

---

[35] https://stealthpath.com/patents/ (last visited November 10, 2025).

(G)     An accounting and/or supplemental damages for all damages incurred by StealthPath from the date of issue of each Asserted Patent through entry of a final, non-appealable judgment;

(H)     If this Court declines to enjoin Zscaler from infringing any of the Asserted Patents, damages for future infringement in lieu of an injunction; and

(I)     Such further relief as the Court deems just and proper.

## **JURY DEMAND**

StealthPath respectfully demands a trial by jury on all issues so triable.

DATED: December 8, 2025                    Respectfully submitted,

*/s/ Andrea L. Fair*

**LATHAM AND WATKINS LLP**
Blake Davis
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
Blake.Davis@lw.com

Perry Viscounty (*pro hac vice* to be filed)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Perry.Viscounty@lw.com

Adam Greenfield
Qiushi (William) Yao (*pro hac vice* to be filed)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Adam.Greenfield@lw.com
William.Yao@lw.com

Of Counsel:

Andrea L. Fair
Texas Bar No. 24078488
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF
STEALTHPATH IP INC.**